All right, we'll hear National Indemnity Company against IRB. Now, good afternoon, your honors. My name is Carl Summers. One second, please. Yes, sir. Now, yes, you may proceed. Good afternoon. My name is Carl Summers, and I'm here with Michael Ware on behalf of appellant IRB. This case presents a straightforward issue of New York law. We've cited several appellate division cases which stand for the proposition that when an indemnified party, like NICO in this case, is released from liability without any financial conditions, that it's no longer at risk, that has the effect of extinguishing the duty of indemnification. The most recent of those decisions is the McDonough case, and that outcome flows directly from the very nature of indemnification, which is a conditional obligation. Let me ask you a couple of questions. We do not have here a representative of the insured. Is that right? We don't have a representative of NICO. No, of the insured. Of CSN. The Brazilian company that suffered the harm. Yes. I believe that these are counsel for CSN. All right. And NICO is not here. NICO is not here. Okay. So first, I want to try and understand what the parties regard as being at stake in this. This is an appeal from the district court's order enforcing the arbitration award as between NICO and IRB. Is that correct? That's correct. Okay. Now, does the insured contend that if we grant enforcement, does the insured contend that such a grant of enforcement would permit you to proceed against IRB to collect the $5 million and more that was the subject of the settlement in the New Jersey district court action? Your Honor, yes. This is Michael Ledley on behalf of an illegal intervener for CSF. You're the insured. NICO has an obligation to include the settlement agreement with CSF. It enforces that you're against IRB. But if I understand correctly, if I understand correctly, does the clock stop? I'll stop the clock on the appellant. As I understand it, no court has ordered this $5 million liability. Isn't that correct? This was the subject of a settlement, a settlement in which IRB was not a party. It had originally been a party, but it was dismissed by NICO, and it was not permitted to participate in the settlement discussions. And furthermore, if I understand correctly, the court disposition of that New Jersey case does not incorporate in any court decision the terms of the settlement. Is that correct? It's correct, Your Honor, that the New Jersey court decision doesn't incorporate the terms of the settlement. But you are contending that an order by our court to affirm the district court's order enforcing the arbitration decision between IRB and NICO would entitle you to collect the $5 million from that New Jersey settlement. Yes, Your Honor. And Judge Buchwald, the district court granted our motion to intervene in NICO's application to enforce the arbitration award because we are the ultimate beneficiary. So we're the party that's economically at interest in enforcement of that, as if NICO had assigned to us the right to assert its indemnification rights under the arbitration award. And does IRB agree that the district court's enforcement order, which we might here affirm, that's what's at stake, do you agree that if we were to affirm that order, that that order permits the insured to proceed against you for the $5 million that the New Jersey case was settled for? I think that the order would result in a $5 million payment by IRB to NICO, which would then be ‑‑ Why? Because it's the party in the New York proceeding, which would then be contractually obliged to hand the money over to CSN. Well, but there hasn't been a liability deterred. Well, I think that ‑‑ That's right. I think that at the conclusion of this argument, I will ask for further briefing on this additional question of whether the arbitration award, which has been affirmed and now been ordered to be enforced, whether such enforcement authorizes and how it authorizes the collection of the $5 million that was the subject of the settlement of the New Jersey action in which IRB did not participate, either as a party or as somebody participating in the settlement. So we'll receive some further briefing on that. But you may proceed now with your argument. Thank you. I think you've, to some extent, put your thumb right on it. The ‑‑ what could have happened here is that NICO could have assigned its right to indemnification to CSN, and CSN then could have stepped into NICO's shoes and presented its claim to the Southern District of New York, the claim that had been assigned to it. And then there would be litigation about the merits of that claim. That's not what happened. What they purported to do was release NICO, say you're free to go. Now let's sit down and decide how much IRB should pay us. That's what happened. And so that's what's before the court now. There could have been another situation. Let me start with the McDonough cases, though, which I do think is the controlling template here. As I said, that case states clearly when an indemnified party is released, the duty to indemnify is extinguished. And that flows directly from the very nature of indemnification, which is a conditional obligation. An indemnifier, like IRB in this case, has no primary liability. Its duty is to protect the indemnified party. If that party experiences an identified loss, then the indemnifier has to step in and protect them and make them whole and cover that loss. So it just necessarily follows that when there's no longer a risk that the indemnified party is ever ---- But procedurally, how do you think you're entitled to defeat the force of the judgment Judge Buchwald signed? I think that the judgment misinterprets New York law, and that's why it should be reversed. I don't find your argument very persuasive because, I mean, I think your argument is a very lawyer-like argument that would make perfect sense in the context of an insurance policy and in many other contexts. But this was this relative arbitration, of an arbitration between two insurers as to which one has to cover what parts of the insured's losses. And the arbitrators made a decision which was largely or which can be described as a substantial justice award. Arbitration is not required to adhere perfectly to legal standards. And what the arbitrators essentially said is that NICO is not responsible. NICO did provide insurance, and therefore it's not compelled to reimburse the $9 million premium that it collected. And furthermore, if it should be held liable, that liability should fall on IRB because IRB engaged in misconduct, in conspiring, in conniving with the insurer to try to pin something on. So that's what the arbitrators decided. And that's not – there's no manifest disregard for the law. There's nothing – there's no bias. There's no nothing. We are not challenging the arbitration awards at all. What? We are not challenging the arbitration awards. Well, but you are because this is – I mean, what's at stake is the enforcement of the arbitration awards. What's at stake is what they – The problem with Judge Buchwald was that she didn't follow McDonald. Because the arbitrators created an indemnification obligation. That – the question now is how do we interpret that given what's happened? Does that require us to pay the $5 million? And we're saying this was an arbitration under New York law. The correct thing to do to interpret it is to look to the controlling New York authority. And if you look at the McDonough case, it really is on point as far as what the fact pattern there was. You're right that in this case it's an arbitration rather than insurance policy. But it's the nature of indemnification that's at stake in McDonough. It's the fact that it's a conditional – of legal doctrine. And they frequently don't. And they frequently make substantial justice awards. Let me address, then, what the arbitrators intended here. I think it's important to remember that we have three insurance policies at issue. The original dispute between IRB and NICO involved whether the loss fell in the original period where NICO was not a retrocessionaire or in the extension period where it was a retrocessionaire. That was this arbitration. And separately, when this policy came up for renewal, IRB told CSN, we are not going to be a reinsurer on this policy. And that resulted in litigation in Brazil about whether CSN could force IRB to provide the coverage. And eventually IRB prevailed in that. But by the time it did prevail, well, in the intervening years, CSN was concerned that there was no retrocessional layer of coverage here. So it circumvented IRB and paid premium directly to the retrocessionaires like NICO to get that coverage. By the time the Brazilian litigation finished, the renewal period was over. It had been over for years. And everyone knew there was no claim in that period. And that's when CSN decided it would like to get back the premium it had paid to the retrocessionaires. And that's what the arbitrators were concerned about. They wanted to protect NICO, as you said. And so what they did is they created a conditional obligation that said, you, because NICO ---- They found that NICO had provided coverage. NICO was paid a premium by CSN, provided the service it was paid for, and was entitled to keep that premium. That's what the arbitrators said. And they said, you, NICO, are entitled to that. We want to protect you. If you ever have to pay that money back, then IRB is going to have to protect you, because this whole conundrum arose because of this fight in Brazil between IRB and CSN. That's the indemnification obligation they created. That is perfectly satisfied by the settlement agreement, which releases NICO without condition. In fact, what we are arguing is the result under New York law is the most perfect encapsulation of what the arbitrators wanted. They said, CSN paid the money. They paid the premium. They got the coverage. That's where it should stand. IRB was simply there as a backstop to protect NICO. That is no longer necessary. NICO has been released. That's the result under New York law. The McDonough case, that's what the arbitrators intended. And tell me again, so I'm absolutely clear, what you think Judge Buchwald got wrong. Well, I think Judge Buchwald said that this case is different than McDonough because that case involved insurance policies and this case involves an arbitration. But I don't think there's any reason for that distinction to matter here. Remind me what specifically you had asked her to do. We asked her to follow McDonough and to hold that this settlement agreement that NICO and CSN agreed to, where CSN said you are released from liability, now let's decide how much someone else should pay. That has the effect under McDonough, and we argued to Judge Buchwald, of extinguishing our duty to indemnify. So she should deny the motion to enforce and hold that we have no ongoing duty to indemnify here. It's been released. I know I've gone over my time. Is that correct? All right. We'll hear from the insured. Good afternoon, Your Honor. May it please the Court. As I said before, my name is Michael Ledley. I'm with Wometh, Mar and Deutsch, and I'm here on behalf of the appellee intervener, CSN. Your Honor, what IRB misunderstands, both on the issue of the standard of review and on the merits, is something that Judge LaValle identified, which is this is not a contract. This is an arbitration award. It's an exercise of the arbitrator's equitable powers, not based on any specific New York law, just based on its inherent equitable powers to remedy what it identified as inequitable conduct by IRB. It granted, effectively, a positive injunction to require IRB to hold NICO harmless for CSN's claim. It did not say that it had to reimburse, that IRB had to reimburse NICO for amounts for which it was held liable. It did not say it needed to indemnify NICO for amounts which NICO had to pay out of its pocket, which is language at page 818, which is language in insurance policies and was the language in the insurance policy in McDonough and all the other cases. So what exactly are you looking for here? Why haven't you been made whole? CSN was looking for return of the premium that it paid. The arbitrator said at the end of the day, you got what you expected and what you paid for, which was both reinsurance and re-reinsurance. That's a good question, Judge Parker. You paid the $9 million and there was no gap, so NICO was on the hook as a re-reinsurer and IRB was on the hook as the reinsurer. What you wanted and what you paid for. Judge Parker, the arbitration panel did not tell CSN anything. CSN was not a party to the arbitration between. I understand that, but in effect, as a result of the arbitration, did not the arbitration confirm, even though you weren't a party, that you got what you paid for and what you were entitled to? No, Your Honor. The arbitration determined as between NICO and IRB as to which policy year or reinsurance policy period CSN's underlying loss fell into. There was a settlement between CSN and its insurance companies and IRB, who was the reinsurer for those prior periods, for $167 million for a massive conveyor belt loss. The dispute between NICO and IRB was whether that loss should fall within what was called the original period where NICO was not on the risk or in the renewal period where NICO was on the risk. CSN was going to get the money regardless, the $167 million that was part of the settlement. That's what that arbitration related to. In connection with the $167 million settlement, IRB separately represented to CSN that it had a legitimate claim, that's the exact words that IRB represented, to recover this $9 million premium for what was called the renewal period because IRB never agreed to be a reinsurer, and so therefore NICO and the other retrocessionaires could never have been on the risk because it breaks the chain of coverage. It's a risk transfer, and without this layer, which would be IRB, since it had never agreed to participate and the Brazilian court said it didn't have to participate, since IRB was gone, there was no one to transfer risk to NICO. So NICO got $9 million and would never have been on risk. This was CSN's argument. CSN never got to present that argument to the arbitration panel because it wasn't a party. CSN never presented this argument to Judge Buchwald when the arbitration award was originally confirmed because it wasn't a party. And if you look at the transcript, Judge Buchwald was surprised to hear that there was this Brazilian arbitration between CSN and IRB. But there was no gap in reinsurance coverage. Is that right? There was gap in reinsurance coverage for the renewal period, yes. The arbitrators determined, and right or wrong, the arbitrators determined that NICO provided the risk for which it was paid a premium, provided coverage for the risk for which it was paid a premium. That is correct as between the parties to the arbitration. CSN was not a party to the arbitration. That can't be binding against CSN, which is exactly the risk that That's fine. That's fine. But that's exactly the risk that NICO faced and why it entered into the settlement and why we were litigating with NICO was because even though NICO had this arbitration award that said IRB was going to be financially responsible for CSN's claim, as NICO says in its papers, there was the risk both in the U.S. and in Brazil that NICO was going to be held liable for that amount, so it had incentive to compromise the $9 million claim. It was $9 million plus $6 million in interest for $5 million, which Judge Buchwald held to be reasonable. Now, the argument that IRB presents is that as a matter of technical insurance law in New York State, the way we structured the settlement is unenforceable. That fails because the arbitration award, Judge LaValle, as you said, is not a contract. It's a piece of equitable relief, which was embodied then in a judgment, and Judge Buchwald's exercise of discretion in enforcing her own judgment is entitled to deference here. The other failing in IRB's argument— You said that Judge Buchwald found that the $5 million settlement was reasonable. Yes, Your Honor. All right, so assuming that's correct, what judicial authority has made a determination that NICO was compelled to give $5 million that you should have gotten back $5 million of the $9 million that you paid as a premium to NICO? There's no judicial determination other than Judge Buchwald's determination that it was reasonable for NICO to settle with CSN for that amount, and that it was subject to the arbitration award. NICO was settling as to how much you should be required to pay. NICO was saying, okay, I will agree with CSN that IRB should pay CSN $5 million. I mean, NICO could have said $5 million. It could have said $3 million. It could have said $5.5 million. It could have said anything. It didn't matter to NICO because it wasn't settling for anything. It was responsible to pay. So what I don't understand is where you get the idea, where you get the proposition that the enforcement of the arbitration award, which said that essentially that IRB should pay what NICO is obligated to return, where has there been a determination of what NICO should be obligated to return, which must be borne by CSN? It must be borne by IRB. Respectfully, Your Honor, the arbitration award does not say that IRB is responsible for what NICO is obligated to pay. Well, it says it was obligated to hold NICO harmless and indemnify NICO against CSN's claim for the return of premium it paid NICO. There's no requirement there that there be a judicial determination that NICO is required to pay. It's simply – it entitles NICO – it gives full protection to NICO and to allow NICO to settle with CSN on reasonable terms. And Judge Buchwald determined that the settlement was objectively reasonable. Now, you say NICO could have settled for $100 million, but that would not be objectively reasonable. And Judge Buchwald determined here that the settlement was reasonable. So explain to me something. Supposing that IRB says, we're not going to pay this. Go ahead and enforce. Go ahead and enforce. What are you going to do? Well, NICO will be – How are you going to enforce it? NICO will be required to take the judgment of the district court and, you know, levy on IRB's assets, just like – Levy on the assets. So where is there a judgment that says $5 million is what they're allowed to collect? Judge Buchwald's judgment. I don't see that in the judgment. Judge Buchwald says it's required to pay $5 million? Yes. Judge Buchwald entered a judgment saying that IRB was required to pay $5 million to NICO. I'm sorry. What page is that? Give me that. This is the judgment? This is the judgment, Your Honor. The court entered judgment granting NICO's – What page? Page, please. Oh. Well, Judge Buchwald's decision is the – is A – it ends at A-227 of the record – of the appendix. The next thing I have is a notice of repeal. Where's the – A-227 is the – for the foregoing reasons, CSN's motion to intervene. And NICO's motion to enforce the judgment are granted? Is that what you're referring to? Correct. And the relief sought by NICO in the motion for enforcement – Where's the judgment? We may have not included the judgment in the joint appendix, so we'd have to look to the underlying record and – Well, what does the judgment say? The judgment grants NICO's motion to enforce the arbitration award and to order IRB to pay $5 million. Can you read me the language, the decree language from the judgment, please? Because we didn't include the judgment in the appendix, Your Honor, I don't have the exact language of the judgment. I'd be happy to submit it to the court afterwards. I don't believe there is a judgment. There is an order on the motion. And that's what was given. There's an order on a – The appeal is from the order granted. And where is that order? It appears at A – finishing at A-227. And so at A-227 it says – it doesn't mention any number. It says – it says CSN's motion to enforce is granted. Your Honor, at page 8 of the order, A-220 in the appendix, the court recites what the relief that NICO is seeking in its motion to enforce. Under the – as you know, under the Federal rules, a judgment has to be embodied in a separate document. Your Honor, if that's the issue, we could go before Judge Buchwald and ask to have a separate judgment entered. What NICO sought was – Wait. So if you look at page 228, you're appealing from the memorandum and order. But you're not appealing from – is this an appealable order? Should you be appealing from a judgment? It has the effect of an injunction, perhaps, Your Honor. I mean, it's – there was no judgment – This is – you know, this is – There was no monetary judgment forthcoming. It had not been requested. The order granted NICO's request for payment of $5 million pursuant to the settlement agreement and the arbitration award. That's the relief that NICO sought, Your Honor, and that's the relief – that's the relief that Judge Buchwald granted. What was the judgment entered below? I do not believe – counsel reminds me I don't believe a separate judgment had been entered in addition to Judge Buchwald's order. But then how can you have jurisdiction if you're not appealing from a final judgment? To be clear, there was a judgment from the original – that was involved in the original appeal. This is a post-judgment proceeding to enforce that original – What did the original judgment say? The original judgment confirmed the arbitration. That's all it said? That's all it said. It didn't talk about $5 million. Not at all. Not at all. That was before the settlement, so that issue hadn't been teed up at all. Right. It had not come up. Right. It didn't say anything about that. Well, the problem I have is that I would be perfectly comfortable with the proposition that if CSN had obtained a judgment against NICO for some amount of money, $5 million or whatever, for the return of the premium, or if CSN had reached a settlement with NICO in which IRB was permitted to participate – I'm sorry, go back a step. If CSN had obtained a judgment from NICO in a proceeding in which IRB participated because its liability is what is at stake, or if it had obtained a settlement with IRB participating and reserving the right to prove to the court that there should be no reimbursement whatsoever because CSN got what it paid the premium for, I would then have no problem with the proposition that IRB should be responsible for that judgment. And I would not be persuaded by IRB's argument that it can't be liable because it's an indemnitor, and if there's no liability, there can be no obligation to indemnify. And furthermore, if CSN were to obtain a judgment still in the future in Brazil or elsewhere that conformed to the standards that I'm talking about, I would have no problem with CSN having an enforceable right to collect that amount. But essentially what we've got is a circumstance where NICO made an agreement with the plaintiff to make IRB responsible for a certain amount of money without NICO being on the hook and without IRB having any chance to – opportunity to participate in that. And even if one says after the fact, well, I think that's reasonable, I don't see anything unreasonable about that settlement, there's still – it's not something that NICO would have been obliged to do. There's been no ruling that NICO should be compelled to return $5 million. I just don't see where there's any appropriateness that the concept of enforce the arbitration award entitles CSN to collect $5 million from IRB. Could I address that? Yeah. Your Honor, so first of all, IRB did – was a party to the New Jersey action. Well, it was, but then NICO dismissed it. It had been a party briefly, but NICO dismissed it. And if I understand correctly, IRB asked to participate in the settlement discussions and was told, no, you can't. That's not fully accurate, Your Honor. IRB participated in a mediation with CSN and NICO for 10 months. Yeah. In which there were two all-day sessions and numerous calls and shuttle diplomacy by Judge Hochberg. That's all very well, but is it not correct that they asked to participate in the settlement discussions and were told – and were excluded? They participated in settlement discussions for 10 months, did not put any money on the table because they were continuing to contest the validity of the arbitration award. And it was only on the last day when NICO and CSN, without having no ability to have IRB participate in a productive way in settlement discussions, CSN and NICO entered into a separate settlement. And after the fact, IRB said, well, can we participate in that? And we had already reached the settlement. So the fact that IRB refused to participate meaningfully, provide any money that would – This was all happening after the arbitration award, right? Yes. And the arbitration award had made it clear that whatever was the resolution of this dispute, it was going to be, as long as it involved payments to CSN, it was going to come out of IRB's pocket. Exactly, Your Honor. So what happens when you have a settlement of a dispute and you can't reach settlement because one of the parties is being obstinate and is refusing to talk settlement? What happens – what do you do then? Well, CSN's rights were vis-a-vis NICO. CSN did not have a direct right against IRB. So CSN did the best that it could. It entered into a settlement with NICO. You didn't do the best you could. You didn't even get a New Jersey judgment that embodied that settlement. Your Honor, there is no requirement, legal or in the arbitration award, for there to be a judgment in order to resolve NICO's claim against – CSN's claim against NICO. Yeah, but it's not a dispute that you had with NICO. It's a dispute with – it's coming out of IRB's pocket. So this was sort of an easy ride. It was an easy settlement because you're two parties settling with someone else's money. Only – yes, Your Honor, two points. Yes, only because IRB was obstinate and – I mean, for whatever reason. I mean, they were clever enough to get out of that morass in Jersey. And the result is they didn't agree to the – they didn't agree to the settlement. Why didn't you get a judgment in New Jersey? You had them in the case. You couldn't get them to agree to a settlement, so get them to be a party to a judgment. If you had done that, there'd be no problem here whatsoever. Because NICO was contesting the claim. NICO felt strongly that the claim didn't have merit. NICO was contesting the claim. CSN felt strongly that it had a claim. NICO was disputing the claim. That's why you enter into a settlement. NICO then said, okay, you're insisting so hard. We'll give you $5 million of IRB's money. That's – Your Honor, it was an arm's-length settlement in the presence of Judge Hochberg. And if I may add one more point, even if you – even if you apply New York indemnity law or insurance law, the Pinto case from this Court held that a nonrecourse settlement like this is enforceable. And it said if – because traditionally, if you have a covenant not to sue and the right for indemnity is assigned to the original plaintiff, so here's CSN, that would be enforceable. IRB agrees with that. Pinto said even if you don't structure it in exactly that way, if what you've done is the functional equivalent of that, which is what CSN and NICO did here, that is enforceable. The Court said don't exalt form over substance, satisfy the clear intent of the parties here, which was to reach agreement on a settlement amount, which was $5 million, then impose an obligation on CSN to enforce its indemnity rights against IRB and pay the money over to – excuse me, against NICO, enforce the rights against IRB and pay that money over to CSN. Under the Pinto case, the – this Court specifically rejected the attempt to exalt form over substance, which is what IRB is trying to do here. And I ask Your Honor to look at that case very carefully, because even if – You're going to get the opportunity to brief all this to us, because these issues are simply not argued at all in the papers that have been submitted to us now. So we will have to consider this, and let's set a schedule for briefing. And why don't we have CSN give us your brief on why the New Jersey settlement represents an obligation on IRB to – in the terms of the arbitration award being enforced, why the enforcement of the arbitration award gives you an entitlement to collect what NICO decided IRB should pay in the New Jersey action. So how about in two weeks from today? That's fine, Your Honor. Two weeks. And give us a letter brief of how many pages do you need to argue this? Five single-spaced pages? Well, make them double-spaced pages. We're old. Yeah. That's fine, Your Honor. Double-spaced – conforming to the spacing and letter type size that our circuit requires, what do you want to do? Well, you can have 15 pages, and IRB will respond. And how long after that? Say 10 days after that? Similar amount of time is fine. And you can file a reply of five pages five days later. Okay? Thank you, Your Honor. Oh, and why don't you brief in addition the question whether there is appellate jurisdiction in this case? And so why don't we have you go – since you're the appellant, go first on that. Who filed the notice of appeal? Yes. Yeah. So why is there appellate jurisdiction? Is there a judgment? Is there – you know the issues. Is there a judgment? Is there a final judgment? The notice of appeal does not reference either a judgment or a final judgment. So do we have a jurisdiction? And then when you – so we're going to get those two briefs – I mean those two letters initially, and then after the two weeks, you can give us your views on appellate Well, yeah, okay. That's all right. That's okay. Okay. I was just going to ask if I could say just a couple words in what I imposed on Oberoi. Yes. Go ahead. Could I just – just to clarify the briefing schedule. So IRB will file a letter in two weeks. We will respond. And then – You followed. Well, on the issue, what seems to me to be the more significant issue is the one in which it looked – in which as I assess it, it seems to me that CSN has the uphill battle because I am mystified as to where you find – and although I don't have any problem with enforcing the order, I don't have a – personally have a problem with enforcing the order as against the reasons that IRB advanced in its briefing. I am mystified as to how – as to how the settlement of the New Jersey case without our – without either a judgment of the New Jersey court or the participation, the agreement of IRB to that settlement constitutes an amount that IRB should be required to pay to CSN. So it seems to me that the initial burden on that one, I think it would be more helpful to us to have that come in the first instance from CSN responded. And you can both discuss – I mean, I don't – does either of you claim that there is no appellate jurisdiction? I think they both agree that there is appellate jurisdiction. So you can persuade us – I mean, CSN – you have an interest in their having appellate jurisdiction, right? You want us to affirm – Yes. – that order. Certainly, yes. So you have as much of an interest as the other side in arguing that there is appellate jurisdiction. You can both tell us about appellate jurisdiction in your briefing. In that same briefing? Yeah, in the same letters, yeah. All right. Thank you. And – I'm sorry. I'm sorry. I wanted to just say a couple things. Okay. Go ahead. I wanted to respond to your observation, Judge LaValle, that what happened here was IRB was excluded. And I think it's telling that what he just described is there's this conflict and there's a fight, and they were finally able to resolve it when they kicked out of the room the one party who had money on the table. That's when they were able to finally resolve the case. Because, as you said, NICO, they could have picked any number. And his response that it's a reasonable number is that's not appropriate. That's not adequate. You know, the test is not is it reasonable, is it possible. It's was it zealously negotiated. Was this a settlement where someone was fighting for IRB's side for the lowest possible amount? And clearly there wasn't. NICO had nothing at stake in that negotiation. And I think that leads to another important policy consideration here. If this type of thing were permissible, it's ripe for abuse. If you could release a party and say now let's figure out how much your indemnitor should pay us, you can imagine if that was enforceable, all kinds of abuses where there's no reason that the indemnified party wouldn't trade away more of the indemnitor's money if it could get anything of value from the third party. And that's exactly what happened here. So I have another question, which is was it clear in the proceedings before Judge Buchwald in the Southern District, in the proceedings that are being appealed from here, was it clearly on the table that CSN was arguing for the entitlement under the label of the IRB to collect $5 million from IRB? And if that was clear, if CSN was making clear that that was what it regarded as its entitlement under an order of enforcement, did IRB object for the reasons that I am now asking you to brief? Did IRB say, no, even if they're entitled to enforce that order, they're not entitled to enforce the settlement that was obtained without our agreement and without a court judgment in which we were a participant? Were those points argued to Judge Buchwald? Yes. Because if they weren't, then it seems to me an argument that CSN can be making to us is that that was clearly at stake before Judge Buchwald, and IRB did not make the arguments that I have aired as questions. IRB did make those arguments. You did. So, well, I mean, I don't know whether CSN agrees with that or not, but if CSN thinks they didn't make those arguments, one of your arguments can perhaps be in your letter that IRB waived or in any event forfeited the opportunity to rely on those arguments. I don't know. I find a lot of this quite mysterious because it doesn't seem to me that Judge Buchwald's after the fact ruling that NICO's agreement that IRB should pay $5 million, that that's reasonable, is the same thing as an obligation on the part of NICO that must be enforced against IRB as an indemnitor under the arbitrator's award. But in any case, you can educate us on those interesting questions. Thank you, Your Honor. Thank you, Your Honor. All right. That concludes our calendar, so we will adjourn court. Thank you. Court is adjourned. Thank you.